UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LORI RENEE POWELL, | NO.  C16-5558-BHS-JPD |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Lori Renee Powell appeals the final decision of the Commissioner of the

Social Security Administration ("Commissioner") which denied her applications for Disability

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that

the Commissioner's decision be REVERSED and REMANDED for a finding of disability.

I.      FACTS AND PROCEDURAL HISTORY

At the time of the most recent administrative hearing, plaintiff was a forty-two year old

woman with a college education.  Administrative Record ("AR") at 70.[1]  Her past work

_____

[1] Plaintiff testified that she received a diploma from Everest College for bookkeeping.
AR at 70, 814-15.

REPORT AND RECOMMENDATION - 1

experience includes employment as an accounting clerk, customer service clerk, and payroll clerk.  AR at 70-71.  Plaintiff was last gainfully employed for approximately eleven months by a temporary agency as a customer service specialist in a billing department in May 2008.  AR at 55, 625.  Plaintiff testified that she was let go from that position due to missing too many days of work for medical reasons.  AR at 55.

On March 4, 2009, plaintiff filed a claim for SSI payments and DIB, alleging an onset date of June 20, 2008.  AR at 84.  Plaintiff asserts that she is disabled due to fibromyalgia, leg and hip pain, fatigue, generalized body aches and pains, head pain, problems with sleeping, depression, and anxiety.  AR at 87.

The Commissioner denied plaintiff's claim initially and on reconsideration.  AR at 87-97.  Plaintiff requested a hearing, which took place on August 18, 2010 and December 2, 2010. AR at 40-79.[2]  On January 21, 2011, the ALJ issued a decision finding plaintiff not disabled and denied benefits based on his finding that plaintiff could perform a specific job existing in significant numbers in the national economy.  AR at 16-37.  The Appeals Council denied plaintiff's request for review, AR at 1-4, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  Plaintiff subsequently sought review by this Court, AR at 636, and the case was remanded for further administrative proceedings on March 1, 2013 based upon the parties' stipulation.  AR at 635-44.[3]

A second hearing was held on January 15, 2014.  AR at 613-30.  On January 31, 2014, the ALJ denied plaintiff's applications.  AR at 837-59.  On November 18, 2014, the Appeals Council once again denied plaintiff's request for review, AR at 860-63, and plaintiff appealed.

---

[2] The first hearing was rescheduled to allow plaintiff adequate time to retain a legal representative.  AR at 40-49.
[3] On May 25, 2013, the Appeals Council vacated the Commissioner's final decision and remanded plaintiff's case.  AR at 645-50.

On July 20, 2015, the case was once again remanded for further administrative proceedings pursuant to a stipulation of the parties.  AR at 866.

On February 4, 2016, a third hearing was held before a different ALJ.  AR at 808-36.  On April 1, 2016, ALJ issued an unfavorable decision.  AR at 777-807.  On June 30, 2016, plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. 3.

## II.     JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.     STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *McCartey v.*

*Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.  EVALUATING DISABILITY

As the claimant, Ms. Powell bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R.

§§ 404.1520(b), 416.920(b).[4]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments, she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform her past relevant work, she is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

---

[4] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

## V.    DECISION BELOW

On April 1, 2016, the ALJ issued a decision finding the following:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2.    The claimant has not engaged in substantial gainful activity since June 20, 2008, the alleged onset date.

3.    The claimant has the following severe impairments: fibromyalgia, degenerative disc disease, sacroiliac dysfunction, obesity, patellofemoral syndrome, chronic pain disorder, depression, and situational anxiety.

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except for the following.  She can stand and walk up to four hours out of an eight-hour-workday, but must be permitted to change position from sitting to standing or from standing to sitting approximately every 30 minutes at the workstation.  She should never climb ladders, ropes, or scaffolding or crawl.  She can occasionally climb ramps and stairs, kneel, and crouch.  She can perform unskilled and semi-skilled tasks up to SVP level 4.  She can have occasional contact with the public, coworkers, and supervisors.

6.    The claimant is capable of performing past relevant work as a general clerical worker.  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7.    The claimant has not been under a disability, as defined in the Social Security Act, from June 20, 2008, through the date of this decision.

AR at 783-799.

## VI.    ISSUES ON APPEAL

The principal issues on appeal are:

1.    Did the ALJ err in evaluating plaintiff's headaches at step two?

2.    Did the ALJ provide clear and convincing reasons for discounting plaintiff's statements about the severity of her symptoms?

3.    Did the ALJ provide specific and legitimate reasons for discounting the opinion of plaintiff's treating physician George Supplitt, M.D.?

4.    Did the ALJ err in phrasing the residual functional capacity?

Dkt. 13 at 2; Dkt. 14 at 1.

## VII.    DISCUSSION

### A.    The ALJ Erred in Evaluating Plaintiff's Headaches at Step Two

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen*, 80 F.3d at 1290 (quoting Social Security Ruling (SSR) 85-28). "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Id*. (citing *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987).

To establish the existence of a medically determinable impairment, the claimant must provide medical evidence consisting of "signs – the results of 'medically acceptable clinical diagnostic techniques,' such as tests – as well as symptoms," a claimant's own perception or description of his physical or mental impairment. *Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005). A claimant's own statement of symptoms alone is *not* enough to establish a medically determinable impairment. *See* 20 C.F.R. §§ 404.1508, 416.908.

1    With respect to plaintiff's migraine headaches, the ALJ only stated that "[t]he

2    claimant's complaints of headaches have been considered a side effect from her medication

3    overuse, rather than as an independent medically determinable impairment." AR at 784. Thus,

4    the ALJ did not accommodate plaintiff's daily migraine headaches in the RFC or elsewhere in

5    his decision.

6    Plaintiff's primary treating physician, Dr. Supplitt, diagnosed and repeatedly treated her

7    headaches since January 8, 2009. AR at 360. She reported suffering from headaches that

8    wake her up at night for approximately eight years. AR at 360. Dr. Supplitt diagnosed

9    plaintiff with muscle tension headaches. AR at 344-45, 349-51. However, when plaintiff

10   underwent a neurological evaluation to determine the cause of her headaches in May 2009,

11   neurologist H. Alexander Krob, M.D. opined that her headaches/migraines were caused by

12   "medication overuse" and "this state will continue until she is successfully weaned from her

13   narcotics." AR at 514. Dr. Supplitt adjusted plaintiff's medication by decreasing her serotonin

14   reuptake inhibitors, and making a plan to try trigger point injections to see if this approach

15   would decrease her fibromyalgia pain. AR at 508-09. However, plaintiff continued to suffer

16   from chronic migraine headaches. *See* AR at 525 (plaintiff reporting "worse frontal

17   headaches" which are "sharp pains" on November 9, 2010); 576 (Dr. Supplitt opined plaintiff's

18   migraines constituted a medically determinable condition); 1435 (plaintiff presented with

19   severe headaches lasting for two or three days on March 23, 2011); 1401 (plaintiff presenting

20   with recurring migraines with aura); 1377 (plaintiff reported on June 6, 2011 that her biggest

21   issues are migraines and muscle tension headaches, and waking up with headaches every

22   morning); 1647 (plaintiff presenting to the emergency department with migraines, nausea and

23   photophobia on March 17, 2014, after taking Imitrex made her headache "ten times worse").

24

Plaintiff contends that the ALJ erred by rejecting plaintiff's chronic migraine headaches as a medically determine impairment at step two on the grounds that they were a medication side effect. Dkt. 13 at 10. Plaintiff asserts that the ALJ limited his analysis of plaintiff's headaches to one visit in May 2009, and failed to address the other records documenting plaintiff's ongoing struggle with headaches or other providers' diagnosis of tension headaches. Plaintiff further points out that after May 12, 2009, not a single provider attributed plaintiff's headaches to medication overuse. *Id.* at 10-11. Plaintiff asserts that this error was harmful because it affected every other step of the five-step sequence, because plaintiff's headaches had more than a minimal effect on her ability to work. *Id.* at 11.

The Commissioner contends that the ALJ did not err because plaintiff continued to take narcotic pain medication, primarily hydrocodone, throughout the entire period and therefore did not abide by neurologist Dr. Krob's recommendation that she reduce her use of narcotic pain medication. Dkt. 14 at 3 (citing AR at 1160-61, 1387-88, 1786). Although the Commissioner concedes that the ALJ must evaluate any documented medication side effects and related limitations on a claimant's ability to work to comply with the regulations, "at the same time, problems that can be effectively controlled cannot support a claim of disability." *Id.* (citing *Warre v. Barnhart*, 439 F.3d 10010, 1006 (9th Cir. 2006)).

As a threshold matter, the Court's review of the record shows that multiple providers have diagnosed plaintiff with the medically determinable impairment of headaches and/or migraines over the course of the entire relevant period, and the ALJ does not appear to question plaintiff's testimony regarding either the frequency or the intensity of her symptoms. Rather, the ALJ appears to summarily reject these practitioners' opinions and all the evidence of plaintiff's ongoing struggle with headaches in favor of Dr. Krob's 2009 opinion that her

1  headaches are a side effect of her narcotic pain medication and therefore need not be

2  considered in this case.

3          Even if the ALJ reasonably found that plaintiff's headaches were a medication side

4  effect, rather than a medically determinable impairment, the Court finds that the ALJ still

5  committed harmful error by failing to accommodate plaintiff's headaches in the RFC

6  assessment. Accordingly to the relevant federal regulations, the ALJ must consider the side-

7  effects of medication taken for pain or other symptoms when assessing a claimant's allegations

8  of disabling symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv). Here, the

9  Court is not persuaded by the Commissioner's argument that plaintiff should be faulted for

10  failing to discontinue her narcotic pain medication, a behavior the Commissioner characterizes

11  as plaintiff "ignor[ing] medical advice from a specialist," when the medication at issue was

12  continually prescribed by plaintiff's treating physician for her chronic fibromyalgia and joint

13  pain. Dkt. 14 at 3. Indeed, if the Court were to adopt such reasoning it would place plaintiff in

14  an impossible position. She could continue to take her prescribed narcotic pain medication in

15  the hopes that it would reduce her chronic pain and improve her ability to function physically,

16  although she may continue to suffer from daily migraine headaches, or she could cease to take

17  her narcotic pain medication in the hopes of eliminating her migraines, but likely suffer

18  decreased physical functioning as a result of her increased pain. Even if plaintiff undertook the

19  second approach, it seems just as likely the Commissioner could fault plaintiff for failing to

20  take her prescribed narcotic pain medication to reduce her pain symptoms. *See Warre*, 439

21  F.3d at 1006 ("Impairments that can be controlled effectively with medication are not disabling

22  for the purpose of determining eligibility for SSI benefits."). The Court declines to adopt the

23  Commissioner's invitation to effectively fault plaintiff for suffering medication side effects in

24

1    this case, especially where her treating physician attempted to adjust her medications and try

2    alternative therapies, *i.e.* trigger point injections, to help resolve the issue.

3           The Court, like the ALJ, is not in the position to "play doctor" and decide whether

4    plaintiff's treating provider could or should have weaned plaintiff off narcotic pain medications

5    rather than adjusting other aspects of her medication regimen in the hopes of reducing her

6    migraine headaches.  The Commissioner is guilty of "playing doctor" in this case, even

7    speculating that "[i]f Powell followed the advice of her neurologist and stopped taking narcotic

8    pain medications and instead started exercising, she might not experience her symptoms to the

9    degree alleged."  Dkt. 14 at 14.  It is the role of plaintiff's treating physicians, and not the

10   Commissioner, to make treatment recommendations.  Plaintiff's primary care physician of over

11   a decade did not deem it appropriate to wean plaintiff off her narcotic pain medication, and

12   plaintiff continued to follow his treatment recommendations.  The ALJ committed harmful

13   error by failing to accommodate plaintiff's functional limitations stemming from her chronic

14   headaches in the RFC in this case.

15          B.     The ALJ Erred in Evaluating the Medical Opinion Evidence

16                 1.      Standards for Reviewing Medical Evidence

17          As a matter of law, more weight is given to a treating physician's opinion than to that

18   of a non-treating physician because a treating physician "is employed to cure and has a greater

19   opportunity to know and observe the patient as an individual."  *Magallanes v. Bowen*, 881 F.2d

20   747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A treating

21   physician's opinion, however, is not necessarily conclusive as to either a physical condition or

22   the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted.

23   *Magallanes*, 881 F.2d at 751.  If an ALJ rejects the opinion of a treating or examining

24   physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not

contradicted by other evidence, and specific and legitimate reasons if it is. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1988). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

The opinions of examining physicians are to be given more weight than non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Like treating physicians, the uncontradicted opinions of examining physicians may not be rejected without clear and convincing evidence. *Id.* An ALJ may reject the controverted opinions of an examining physician only by providing specific and legitimate reasons that are supported by the record. *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

Opinions from non-examining medical sources are to be given less weight than treating or examining doctors. *Lester*, 81 F.3d at 831. However, an ALJ must always evaluate the opinions from such sources and may not simply ignore them. In other words, an ALJ must evaluate the opinion of a non-examining source and explain the weight given to it. Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *2. Although an ALJ generally gives more weight to an examining doctor's opinion than to a non-examining doctor's opinion, a non-examining doctor's opinion may nonetheless constitute substantial evidence if it is consistent with other independent evidence in the record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Orn*, 495 F.3d at 632-33.

1

2.      *George Supplitt, M.D.*[5]

2

a.      *December 5, 2010 Opinion*

3

Dr. Supplitt has treated plaintiff for at least eleven years as her primary care provider.

4

AR at 576 (letter from Dr. Supplitt to plaintiff's representative).  In his December 2010

5

opinion letter, Dr. Supplitt diagnosed plaintiff with fibromyalgia, sleep apnea, migraines,

6

hypothyroidism, insomnia, depression, restless leg syndrome, tobacco dependence, stress

7

incontinence, dyspepsia, and vitamin D deficiency.  AR at 576.  He listed her symptoms as

8

headaches, chronic muscle ache, insomnia, chronic fatigue, stomach pain, and chronic joint

9

pain.  AR at 576.  He stated that plaintiff suffers from pain and fatigue for 2/3 of the work day,

10

and weakness and nervousness 1/3 of the work day.  AR at 578.  He opined that plaintiff's

11

symptoms would likely increase if she were placed in a competitive work environment, and

12

explained that "at this time physical activity appears to exacerbate her Myalgias, arthralgias

13

and fatigue.  This in turn worsens her depression."  AR at 578.  He concluded that plaintiff's

14

impairments would cause her to miss more than two days a month from even a routine, simple,

15

and sedentary job.  AR at 578.  Specifically, Dr. Supplitt stated that "physical activity on the

16

rate of daily work activity, [40 hours per week], would worsen her pain and fatigue."  AR at

17

578.  However, Dr. Supplitt did not fill out the section of the form entitled "residual functional

18

capacity assessment," and noted that he was "unable to assess physical capacities" regarding

19

plaintiff's ability to lift and carry, stand/walk, or sit in an eight-hour workday.  AR at 577-78.

20

The ALJ gave little weight to Dr. Supplitt's December 2010 opinion, reasoning that

21

22
23
24

[5] Plaintiff does not challenge the ALJ's treatment of Dr. Supplitt's November 21, 2010 letter, which was two sentence in length, providing that plaintiff had fibrositis and fibromyalgia, and that her conditions were a continuing source of pain limiting her ability to do activities.  AR at 524.  The ALJ stated that this letter was consistent with his decision, but because it was "vague and not offered in any functional terms," it was given little weight.  AR at 794.

1    "Dr. Supplitt offered no analysis to support his conclusions, in fact he refused to offer an

2    opinion regarding the claimant's functional limitations.  Moreover, the undersigned notes that

3    this opinion is inconsistent with the claimant's activities of daily living and her ability to raise

4    her children."  AR at 795.

5            Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for

6    rejecting Dr. Supplitt's opinion, because the ALJ failed to cite, or otherwise identify, any

7    inconsistent medical evidence that would support his rejection.  Dkt. 13 at 4.  For example, the

8    ALJ did not explain what activities of daily living were inconsistent with Dr. Supplitt's

9    opinion, and the ALJ "offered absolutely no details regarding Ms. Powell's parenting."  *Id.*

10   Plaintiff contends that the ALJ erred by failing to "cite to a single record demonstrate Ms.

11   Powell's ability to raise children was inconsistent with Dr. Supplitt's findings.  In fact, record

12   evidence suggests that Ms. Powell's son helps take care of her, not the contrary."  *Id.* (citing

13   AR at 230).  Finally, contrary to the ALJ's assertion that Dr. Supplitt provided no analysis to

14   support his conclusion, plaintiff argues that Dr. Supplitt's opinion that a competitive work

15   environment would cause Ms. Powell's symptoms to worsen, and that she would miss at least

16   two days of work per month, are functional limitations that the ALJ provided no reasons for

17   rejecting.  *Id.* (citing AR at 578).  Plaintiff asserts that "the fact that Dr. Supplitt did not opine

18   as to exertional, postural, or manipulative limitations, standing alone, is not a legitimate reason

19   to reject the functional limitations Dr. Supplitt did address."  *Id.*

20           The Commissioner responds that "the ALJ may discredit an opinion that is

21   "conclusory, brief, and unsupported by objective medical findings."  *Bayliss*, 427 F.3d at 1216.

22   The Commissioner asserts that contrary to the plaintiff's argument that Dr. Supplitt adequately

23   supported his opinions because he explained that plaintiff's physical activity exacerbated her

24   myalgiass, arthralgia and fatigue, which in turn worsened her depression, "this argument relies

REPORT AND RECOMMENDATION - 14

1   on statements from Dr. Supplitt that are entirely conclusory . . . it was appropriate for the ALJ

2   to discount this opinion for being unsupported and unexplained." Dkt. 14 at 13. The

3   Commissioner also argues that the ALJ reasonably concluded that plaintiff's daily activities

4   contradicted Dr. Supplitt's opinion because she "was able to persist day in and day out when

5   she cared for her children and husband." *Id.* The Commissioner asserts that although the ALJ

6   did not explain how her activities were inconsistent with Dr. Supplitt's opinion, "the Court

7   may draw specific and legitimate inferences from the ALJ's decision." *Id.*

8   The Court finds that the ALJ erred by concluding that Dr. Supplitt "refused to offer an

9   opinion regarding the claimant's functional limitations." AR at 795. Although Dr. Supplitt

10  apparently did not have an opportunity to evaluate plaintiff's physical functional capacities

11  with the degree of specificity that the ALJ would have liked, Dr. Supplitt did opine that

12  plaintiff had several functional limitations. Specifically, Dr. Supplitt opined that plaintiff's

13  impairments would cause her to miss more than two days a month from even a routine, simple,

14  and sedentary job, and "physical activity on the rate of daily work activity, [40 hours per

15  week], would worsen her pain and fatigue." AR at 578. Contrary to the ALJ's assertion that

16  Dr. Supplitt "offered no analysis to support his conclusions," Dr. Supplitt explained that the

17  reason plaintiff's symptoms would increase in severity if she were working in a competitive

18  work environment was because "physical activity appears to exacerbate her Myalgias,

19  arthralgias and fatigue. This in turn worsens her depression." AR at 578.

20  Moreover, the Court declines the Commissioner's invitation to guess at what the ALJ

21  must have been thinking when he rejected Dr. Supplitt's opinion based upon a perceived

22  inconsistency "with the claimant's activities of daily living and her ability to raise her

23  children." AR at 795. It is the ALJ's obligation to explain how plaintiff's daily activities are

24  actually inconsistent with Dr. Supplitt's opinion regarding plaintiff's functional limitations.

1    Especially in this context, where the only "daily activity" the ALJ actually identifies is

2    plaintiff's ability to "raise her children," the Commissioner's suggestion that the Court should

3    "infer" an inconsistency with Dr. Supplitt's opinion is distasteful and unpersuasive.  AR at

4    795.  There is evidence in this case that plaintiff's older sons do a lot to help plaintiff with her

5    activities of daily living at home, AR at 230, and plaintiff testified that she struggles a great

6    deal to keep up her home.  AR at 821.  Plaintiff testified that it gives her anxiety to know that

7    her family "lives in this messy house, and it makes me feel like a horrible wife and mother."

8    AR at 822.  Plaintiff testified that although she tries her best as a parent to meet her children's

9    needs, she has difficulty doing so and regularly "needs help" from her parents and two older

10   sons.  AR at 824.  She previously testified that feeling "like such a burden and a failure as a

11   parent" contributed to her suicide attempt in 2012, as she "thought my kids would be better off

12   …without me."  AR at 627.  The Court will not assume, simply by virtue of the fact that the

13   plaintiff is a mother, that her daily activities are inconsistent with disability.  The ALJ failed to

14   provide a specific and legitimate reason to reject Dr. Supplitt's December 5, 2010 opinion.

15                               b.    *January 2014 Opinion*

16        On January 7, 2014,[6] Dr. Supplitt offered a second opinion regarding plaintiff's

17   functional limitations.  AR at 756-57.  He opined that plaintiff's attention and concentration

18   would be impaired to such a degree that she could not be expected to perform even simple

19   work tasks for 33% of a standard workweek.  AR at 756.  He based this finding on plaintiff's

20   chronic sacroiliac pain combined with her fibromyalgia pain.  AR at 756.  He further opined

21   that her impairments, symptoms, medication and their side effects would cause her to miss at

22

23

24        ⁶ It appears that Dr. Supplitt accidentally dated the questionnaire January 7, 2013, as
     the top of the letter indicates that it was sent to him on December 30, 2013.  AR at 756-57.

REPORT AND RECOMMENDATION - 16

least 16 hours of work a month from even a simple and routine sedentary job, because plaintiff "has difficulty managing pain related to sacroiliac dysfunction and fibromyalgia."  AR at 757.

The ALJ rejected this opinion for the same reasons that he rejected Dr. Supplitt's December 5, 2010 opinion.  AR at 795.  The Court again finds that the ALJ failed to acknowledge the functional limitations that Dr. Supplitt did identify, and his explanation (however brief) for his opinion.  The ALJ also failed to explain how plaintiff's daily activities or "ability to raise her children" belies Dr. Supplitt's opinion that her attention and concentration would prevent her from performing simple work tasks for 33% of the standard workweek.  AR at 756.  The ALJ did not provide specific and legitimate reasons for rejecting this treating physician's opinions.

C.   The ALJ Did Not Provide Clear and Convincing Reasons for Discounting Plaintiff's Statements about the Severity of her Symptoms

1.   *Legal Standard for Evaluating the Plaintiff's Testimony*

As noted above, it is the province of the ALJ to determine what weight should be afforded to a claimant's testimony, and this determination will not be disturbed unless it is not supported by substantial evidence.  A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis.  20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281.  First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms.  20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82.  Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence.  *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988).  Absent affirmative evidence showing that the

claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.[7]  *Burrell v. Colvin* 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012)).  *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

When evaluating a claimant's subjective symptom testimony, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient.  *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.  The ALJ may consider "ordinary techniques of credibility evaluation," including a claimant's reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms.  *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (citing *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

####    2.    *The ALJ Erred in Evaluating Plaintiff's Testimony*

The Court finds that the ALJ failed to provide clear and convincing reasons for rejecting plaintiff's testimony regarding the severity of her symptoms.  First, the ALJ discredited plaintiff's reports regarding difficulties with her memory because "at the hearing, the claimant did not demonstrate any memory deficits or any difficulty tracking conversation."

---

[7] In Social Security Ruling (SSR) 16-3p, the Social Security Administration rescinded SSR 96-7p, eliminated the term "credibility" from its sub-regulatory policy, clarified that "subjective symptom evaluation is not an examination of an individual's character[,]" and indicated it would more "more closely follow [its] regulatory language regarding symptom evaluation."  SSR 16-3p.  This change is effective March 28, 2016, and therefore does apply to the April 1, 2016 ALJ decision in this case.  However, the Court continues to cite to relevant case law from the Ninth Circuit utilizing the term credibility.

1   AR at 796.[8]  As discussed above, the ALJ is not an acceptable medical source, qualified to

2   offer a medical opinion based upon his observations at the hearing.  Although the ALJ

3   correctly points out that plaintiff's mental status examinations generally showed normal results

4   as far has plaintiff's long and short term memory, the exhibits cited by the ALJ also show that

5   plaintiff repeatedly complained of memory and concentration problems in her everyday life

6   related to her fatigue and pain.  AR at 440 (complaining of "getting spacey and having memory

7   problems"), 493 (reporting that "she forgets everything and is very scattered, at times feels 'she

8   is losing her mind'").  Plaintiff's mother also testified that her daughter's memory is "terrible."

9   AR at 228-30.  The Court is not persuaded that plaintiff's performance on mental status

10  examination, such as recalling the dates of past events or what she ate for dinner the night

11  before, necessarily disproves plaintiff's testimony regarding when and how she experiences

12  difficulty with her memory.  "Fibro fog" is a commonly reported symptom of fibromyalgia,

13  and generally includes some difficulty with concentration and memory.  *See* SSR 12-2P,

14  *available at* 2012 WL 3104869, at *3 (noting a diagnosis of fibromyalgia using the 2010

15  Criteria requires at least six symptoms or co-occurring signs, including "manifestations of

16  fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety

17  disorder, or irritable bowel syndrome....").  It is also unclear how plaintiff's ability to use the

18  computer and research her medical conditions, an additional reason cited by the ALJ for

19  rejecting plaintiff's testimony about her memory problems, is inconsistent with plaintiff's

20  report.  AR at 796.

21         The ALJ's second reason for discounting plaintiff's symptom testimony was that

22  plaintiff "alleges the severe impairment of headaches, however, it is notable that she did not

23

24         [8] Plaintiff stated that her impairments affect her memory, concentration, and ability to
    complete tasks.  AR at 236.

mention any difficulties with headaches at the most recent hearing." AR at 796. This is an incorrect statement. Plaintiff testified at her most recent hearing that "the headaches are horrible." AR at 825. She also stated that they were related to her fibromyalgia and stated that "I don't know what to do." AR at 825. This was not a clear and convincing reason to reject plaintiff's testimony.

The ALJ also cited plaintiff's alleged "history of non-compliance with treatment recommendations," but this was not a clear and convincing reason for rejecting her testimony. None of the records cited by the ALJ actually identify noncompliance. AR at 455, 986, 1026, 1124, 1315, 1779. These records, at most, contain recommendations for plaintiff to exercise daily, "go outside to expose to the daylight," avoid caffeine, "avoid junk and processed foods," regularly use her C-PAP machine (now that she has insurance that will cover the cost), "weight reduction strongly encouraged," and the like. AR at 986, 1026, 1124. The ALJ states that "multiple providers have explained to her that opiates are not generally helpful to treat fibromyalgia, however, the claimant has continued to seek chronic opiate treatment." AR at 797. This is a mischaracterization of the record. Apart from the ALJ's prior discussion of Dr. Krob's opinion that her migraines were a side effect of her narcotic pain medication, the ALJ did not cite to any specific medical opinion providing that plaintiff was exhibiting inappropriate drug seeking behavior by continuing to comply with her primary care physician's treatment recommendations.[9]

The ALJ also cited plaintiff's failure to lose weight and regularly exercise, despite her BMI, as evidence of plaintiff's noncompliance with her doctors' advice. However, "a treating source's statement that an individual 'should' lose weight or has 'been advised' to get more

_____

[9] Even Dr. Oh, who opined that there is limited evidence to support ongoing opiod therapy in the management of fibromyalgia, recommended that plaintiff continue to take Vicodin, which is a narcotic, or Tramadol, a narcotic-like substance. AR at 1345.

exercise is not prescribed treatment." SSR 02–1p.  Plaintiff's failure to follow her doctors' advice to lose weight, like her failure to quit smoking, is not a clear and convincing reason for the ALJ to reject her testimony.  *See also Orn,* 495 F.3d at 638 (citing SSR 01–1p).  As argued by plaintiff, providers' recommendations that plaintiff exercise daily shows that multiple providers believed aerobic activity might help treat her severe fibromyalgia symptoms, and not that they believed plaintiff was exaggerating her symptoms and was somehow much more capable than alleged.  AR at 797, 455, 500, 507, 513, 539, 548.  For example, Dr. Oh stated "the mainstay of treatment for fibromyalgia is psychological counseling, appropriate medication management, and activation with physical therapy/pool therapy with a focus on aerobic exercise."  AR at 1149.  The record reflects that plaintiff has attempted to comply with these providers' recommendations to exercise by increasing her walking, although she finds walking difficult due to pain.  AR at 992 ("She is getting pain more quickly when she tries to do walking").  For example, plaintiff testified that although she used to be able to walk her young daughter to the bus stop, she now has to drive her there.  Plaintiff also regularly uses a cane to ambulate, and has been prescribed a walker.

Similarly, the ALJ discredited plaintiff because she has "regularly engaged in activities inconsistent with her alleged limitations, including turning blackberry bushes, cooking thanksgiving dinner, helping a sick neighbor, raising her children, and caring for her allegedly disabled husband."  AR at 797.  However, the record cited by the ALJ does not reflect that plaintiff cooked Thanksgiving dinner, or helped a sick neighbor at all.  AR at 1003.  Although treatment notes reflect that plaintiff turned blackberry bushes on one occasion, she suffered "worse back pain" and fatigue and reported that she "can't stand as long to do the dishes" as a result of this activity.  AR at 991.  As discussed above, the ALJ also failed to adequately describe how plaintiff's role in caring for her children or husband undermines her allegations.

The ALJ also failed to support his finding that plaintiff's allegations are not consistent with the objective evidence. In fact, he did not cite to a single piece of objective evidence that he believes undermines her complaints. AR at 797. He asserted generally that "her gait is usually normal, or only mildly antalgic," but failed to acknowledge evidence that plaintiff was prescribed a four wheel walker in April 2014 and she has used a cane or walker to ambulate for a couple of years. AR at 1037, 819-20.[10]

Finally, the Court is not persuaded that plaintiff's unsuccessful attempt to perform part-time work as a cashier at a local convenience store discredits plaintiff's allegations that she cannot perform full-time work. Plaintiff testified that the position ended after two weeks because "I just wasn't able to do it, to keep up with it. It was either part-time work, and neglect of my house and my family, or try to take care of my house and my family and not work. It was just a lot on my body, but at that time my husband got sick, so I just wasn't able to work for that reason." AR at 815. The ALJ focused entirely on plaintiff's statement that she needed to care for her family, and ignored plaintiff's statement that even part-time work was too hard on her body and she was not able to keep up with it. The ALJ also stated that plaintiff's providers "consistently observe the claimant is a 'stay at home mom' rather than unemployed due to disability," AR at 797, and concludes that the providers' use of this label "suggests that the claimant's unemployment might be due to her desire to stay home and care for her family, rather than inability to perform all work activity." AR at 797. It is

---

[10] The ALJ also speculates that plaintiff may be diverting her narcotics because she failed to take them for a two-week period from August 25, 2015 to September 8, 2015, or alternatively, that she had not been taking her medication at that time due to diminished pain levels. AR at 787. No provider noted any drug-seeking behavior or suspicious activity with respect to plaintiff's use of her prescribed narcotic pain medication, and the record clearly reflects that plaintiff's symptoms have waxed and waned over the years. No provider has suggested that plaintiff is malingering. Without more, a two-week gap in taking prescribed narcotic medication was not a clear and convincing reason to reject plaintiff's testimony about her functioning over a seven-year period.

1    understandable why a person would prefer to present themselves as a stay at home parent,

2    rather than a disabled person, and medical providers' description of plaintiff as such does not

3    undermine the functional limitations they assessed.  As discussed above, the ALJ's speculation

4    related to plaintiff's role as a wife and mother, and the ALJ's apparent conclusion that caring

5    for a family is de facto inconsistent with a claim of disabling symptoms, are not supported by

6    substantial evidence.  The ALJ did not provide clear and convincing reasons, supported by

7    substantial evidence, for finding plaintiff's testimony less than fully credible in this case.

8            D.      It is Unnecessary to Resolve the Remaining Assignment of Error

9            The parties' final dispute concerns the ALJ's phrasing of the RFC in this case.  "RFC is

10   an assessment of an individual's ability to do sustained work-related physical and mental

11   activities in a work setting on a regular and continuing basis.  A 'regular and continuing basis'

12   means 8 hours a day, for 5 days a week, or an equivalent work schedule."  SSR 96-8p at 1.

13   The RFC assessment must be based on all of the relevant evidence in the case record, such as:

14   medical history; the effects of treatment, including limitations or restrictions imposed by the

15   mechanics of treatment (e.g., side effects of medication); reports of daily activities; lay

16   activities; recorded observations; medical source statements; effects of symptoms, including

17   pain, that are reasonably attributed to a medically determinable impairment; evidence from

18   work attempts; need for structured living environment; and work evaluations.  SSR 96-8p.

19           Plaintiff contends that the ALJ erred in assessing plaintiff's RFC by limiting her to

20   "unskilled and semi-skilled tasks up to SVP level 4."  Dkt. 13 at 11 (citing AR at 786).

21   Plaintiff points out that "the skill level of an occupation is not a quantification of function,"

22   and "it is the functional abilities of an individual that determine what skill-level of jobs they

23   are able to engage in."  Id.  Here, plaintiff argues the "ALJ failed to address any of the actual

24   work functions specified in 20 C.F.R. § 1545(c)," and therefore the RFC is invalid.  Plaintiff

1    points out that a "function by function analysis would address all the areas of mental

2    functioning Plaintiff has difficulties with." *Id.* Plaintiff argues that the ALJ "effectively

3    instructed the vocational expert to testify that Plaintiff could perform those occupations,

4    notwithstanding her mental impairments," by precluding the VE from independently assessing

5    whether such occupations could be performed based on a function-by-function quantification.

6    *Id.* at 12-13.

7        In light of the other errors in this case, discussed above, including the ALJ's failure to

8    accommodate plaintiff's migraine headaches in the RFC, it is unnecessary to determine

9    whether the ALJ's expression of the RFC in this case constituted harmful error.  The Court

10   does note, however, that in the future the ALJ should describe a claimant's mental abilities in

11   terms of work functions discussed in 20 C.F.R. § 404.1545(c) to avoid confusion or mistakenly

12   directing the vocational expert to testify that a claimant can perform certain occupations.

13            E.    An Award of Benefits is the Appropriate Remedy

14       The Court has discretion to remand for further proceedings or to award benefits.  *See*

15   *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).  However, a remand for an immediate

16   award of benefits is an "extreme remedy," appropriate "only in 'rare circumstances.'"  *Brown-*

17   *Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (quoting *Treichler v. Comm'r of Soc. Sec.*

18   *Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)).

19       Before remanding a case for a finding of disability, three requirements must be met.

20   First, the ALJ must have "'failed to provide legally sufficient reasons for rejecting evidence,

21   whether claimant testimony or medical opinion.'"  *Id.* (quoting *Garrison v. Colvin*, 759 F.3d

22   995, 1020 (9th Cir. 2014)).  Second, the Court must conclude "'the record has been fully

23   developed and further administrative proceedings would serve no useful purpose.'"  *Id.*  In so

24   doing, the Court considers the existence of "'outstanding issues'" that must be resolved before

1     a disability determination can be made.  *Id.* (quoting *Treichler*, 775 F.3d at 1105).  Third, the

2     Court must conclude that, "'if the improperly discredited evidence were credited as true, the

3     ALJ would be required to find the claimant disabled on remand.'"  *Id.* at 495 (quoting

4     *Garrison*, 759 F.3d at 1021).  *See also Treichler*, 775 F.3d 1101 ("Third, if we conclude that

5     no outstanding issues remain and further proceedings would not be useful, we . . . [find] the

6     relevant testimony credible as a matter of law, and then determine whether the record, taken as

7     a whole, leaves "'not the slightest uncertainty as to the outcome of [the] proceeding[.]'")

8     (citations omitted).

9              Finally, even with satisfaction of the three requirements, the Court retains

10    "'flexibility'" in determining the proper remedy.  *Brown-Hunter*, 806 F.3d at 495 (quoting

11    *Garrison*, 759 F.3d at 1021).  The Court may remand for further proceedings "'when the

12    record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within

13    the meaning of the Social Security Act.'"  *Id.*  As stated by the Ninth Circuit:

14            The touchstone for an award of benefits is the existence of a disability, not the
              agency's legal error. To condition an award of benefits only on the existence of
15            legal error by the ALJ would in many cases make "disability benefits . . .
              available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)."
16
17    *Id.* at 495 (quoted sources omitted).  *Accord Strauss v. Comm'r of Social Sec. Admin.*, 635 F.3d

18    1135, 1138 (9th Cir. 2011) ("A claimant is not entitled to benefits under the statute unless the

19    claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be.")  If the record

20    is "uncertain and ambiguous," the matter is properly remanded for further proceedings.

      *Treichler*, 775 F.3d at 1105.

21

22             As discussed above, the Court has determined that the ALJ erred by rejecting any

23    limitations related to plaintiff's migraine headaches, and by failing to provide legally sufficient

24    reasons for rejecting the medical opinions of plaintiff's primary care physician.  As a result of

1    the ALJ's errors, the ALJ's RFC assessment did not include Dr. Supplitt's opinion that

2    plaintiff's pain, fatigue, and depression would worsen if she were placed in a competitive work

3    environment, and would cause her to miss more than two days of work a month from even a

4    routine, sedentary job.  AR at 578.  Similarly, the ALJ's RFC assessment does not include Dr.

5    Supplitt's opinion that plaintiff's attention and concentration would be impaired to such a

6    degree that she could not perform even simple work tasks for 33% of a standard workweek,

7    and that she would miss at least 16 hours of work per month from even a simple and routine

8    sedentary job as a result of her impairments, symptoms, and medication side effects.  AR at

9    756.  Dr. Supplitt's treating notes, which span many years, support his opinions.

10        The vocational expert testimony established that if an individual missed work two or

11   more days per month on an ongoing basis, or if an individual would be off tasks 15-20% of the

12   workday, the person would be unable to sustain competitive employment.  AR at 833.  Thus, if

13   the improperly discredited opinions of Dr. Supplitt are credited as true, the ALJ would be

14   required to find the claimant disabled on remand.

15        The parties disagree as to whether the second factor has been satisfied.  According to

16   the Commissioner, there remain outstanding issues which would make further proceedings

17   useful.  Dkt. 14 at 14.  As noted above, however, the Commissioner's explanation as to why

18   the second factor has not been satisfied is unpersuasive.  The Court declines to speculate that

19   "if Powell followed the advice of her neurologist and stopped taking narcotic pain medications

20   and instead started exercising, she might not experience her symptoms to the degree alleged."

21   Dkt. 14 at 14.  This is not a valid basis to remand this case for further proceedings, and require

22   plaintiff to endure a fourth administrative hearing and several more years of delay before she

23

24

REPORT AND RECOMMENDATION - 26

can receive disability benefits.[11]

In the absence of any persuasive argument as to that factor, the Court finds that a fourth administrative hearing would not serve a useful purpose.  Plaintiff's benefits application was filed seven years ago, and errors persist in the ALJ's decision despite three rounds of administrative proceedings.  Because the improperly discredited opinions, if credited as true, would support a finding of disability, this matter should be remanded for such a finding.

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for a finding of disability.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **January 4, 2017**.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **January 6, 2017**.

//

//

//

---

[11] As this is the Commissioner's only argument, it is not clear what further factual development is (or even could be) necessary regarding opinion evidence and testimony. The Commissioner simply states in a conclusory fashion that "because the record contained evidence that cases serious doubt as to whether Powell is disabled, remand for an immediate award of benefits is not the appropriate remedy." *Id*. at 14.

REPORT AND RECOMMENDATION - 27

1    This Report and Recommendation is not an appealable order.  Thus, a notice of appeal

2  seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the

3  assigned District Judge acts on this Report and Recommendation.

4    DATED this 21st day of December, 2016.

5

6    _____
     JAMES P. DONOHUE
7    Chief United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24